Eric M. Schmitz, Plaintiff-Appellant-Petitioner,

v.

Firstar Bank Milwaukee, Defendant-Respondent, †

Putnam Mutual Funds Corporation, Putnam Investments, Northern Trust Company, Fortis Investors, Inc., and Putnam Fiduciary Trust Company, Defendants.

Supreme Court

*No. 01–2139. Oral argument January 16, 2003.—Decided March 25, 2003.*

2003 WI 21

(Also reported in 658 N.W.2d 442.)

† Motion for reconsideration denied 7-1-03.

For the plaintiff-appellant-petitioner there were briefs by *Joseph G. Doherty* and *Doherty Law Offices, S.C.,* West Bend, and oral argument by *Joseph G. Doherty.*

For the defendant-respondent there was a brief by *Gary P. Lantzy* and *Kohner, Mann & Kailas, S.C.,* Milwaukee, and oral argument by *Gary P. Lantzy.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF

JUSTICE. This is a review of a published decision of the court of appeals, *Schmitz v. Firstar Bank Milwaukee,* 2002 WI App 123, 254 Wis. 2d 732, 647 N.W.2d 379, affirming the judgment of the Circuit Court for Ozaukee County, Walter J. Swietlik, Judge. The circuit court granted summary judgment to one of the defendants, Firstar Bank Milwaukee, dismissing Eric M. Schmitz's claims against Firstar Bank.[1] The court of appeals affirmed the judgment of the circuit court. We reverse the decision of the court of appeals.

¶ 2. Eric M. Schmitz, the plaintiff-payee, sued Firstar Bank Milwaukee for negligence and conversion for depositing two checks (in the amounts of $58,599.19 and $6,173.21), issued by Putnam Investments and payable to his order, into the account of Georgetown Financial Corporation. The first check, in the larger amount, did not have the plaintiff-payee's endorsement. The second check, in the smaller amount, had an endorsement bearing the plaintiff-payee's name that the plaintiff-payee alleges is a forged signature. Each check had "for deposit only" and Georgetown Financial stamped on the back. The plaintiff-payee claimed monetary damages equal to the face value of the two Putnam checks.

¶ 3. The plaintiff-payee moved for partial summary judgment against Firstar Bank with respect to the larger check. The plaintiff-payee argued that because Georgetown Financial did not have authority to endorse the check, Firstar Bank was liable as a matter of

---

[1] The plaintiff-payee's complaint names other entities as defendants, but only Firstar Bank is involved in the present review.

law for making payment on this check, which was presented by Georgetown Financial without his actual or purported signature.

¶ 4. Firstar Bank then moved for summary judgment as to both checks, contending that two limited powers of attorney executed by the plaintiff-payee gave Georgetown Financial authority to endorse and receive payment on the two Putnam checks at issue in this case.

¶ 5. The circuit court granted Firstar Bank's motion for summary judgment. The circuit court held that the two limited powers of attorney authorized Georgetown Financial to endorse and deposit the two checks, thereby rendering unnecessary any consideration of the reasonableness of Firstar Bank's conduct. The court of appeals affirmed the judgment of the circuit court granting summary judgment to Firstar Bank.

¶ 6. We review a circuit court order granting summary judgment by applying the same methodology as that used by the circuit court.[2] Summary judgment will be entered when a court is satisfied that the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[3] Thus, an appellate court will reverse a summary judgment if the record reveals that material facts are in dispute or if the circuit court misapplied the law.[4]

---

[2] *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

[3] Wis. Stat. § 802.08(2) (1999–2000).

[4] *Jankee v. Clark County,* 2000 WI 64, ¶ 48, 235 Wis. 2d 700, 612 N.W.2d 297.

¶ 7. The ultimate issue in this case is whether Firstar Bank is liable to the plaintiff-payee for conversion for depositing the two checks, one without the plaintiff-payee's endorsement and one with a forged endorsement of the plaintiff-payee, into Georgetown Financial's account. The only issue properly before this court, however, is whether the two limited powers of attorney authorize Georgetown Financial to endorse the two Putnam checks on behalf of the plaintiff-payee.

¶ 8. We hold that the limited powers of attorney in the present case did not authorize Georgetown Financial to endorse the two Putnam checks made payable to the order of the plaintiff-payee. Accordingly, the court of appeals' decision affirming summary judgment in favor of Firstar Bank is reversed. The cause is remanded to the circuit court for further proceedings on whether Firstar Bank is liable for the value of either or both checks in light of our conclusion that Georgetown Financial did not have the authority to endorse the checks on behalf of the plaintiff-payee.

I

¶ 9. The following facts are derived from the complaint and other documents in the record. Georgetown Financial was a Wisconsin company that provided investment, insurance, and financial services. James O'Hearn was the sole owner and chief executive officer of Georgetown Financial and the plaintiff-payee was one of his clients.

¶ 10. In 1992, the plaintiff-payee executed two "Limited Power of Attorney" forms with Georgetown Financial. Both forms contained typewritten, boilerplate text and included a blank space for the client to insert his or her name, a blank space for the client to

identify a "company name," a series of blank lines in which the client could list "policy names and numbers," and lines for the client's signature, the date, and a witness's signature.

¶ 11. The first limited power of attorney was signed by the plaintiff-payee on July 10, 1992.[5] The typewritten boilerplate text provided Georgetown Financial with the authority to "accomplish the surrender" of certain life insurance policies "identified below" and "negotiations of their cash values." It further provided that "Power of Attorney also applies to stocks, bonds and other securities."[6] "American Funds" was written in by hand under "company name" and four different account names and numbers were similarly written in by hand on the lines under "policy name and

---

[5] The limited power of attorney was also signed by Katreena Schmitz, who is apparently the wife of the plaintiff-payee.

[6] The full text of the July 1992 limited power of attorney is as follows:

I, Eric M. Schmitz, as owner of the life insurance policies identified below, do hereby designate Georgetown Financial Corporation as my attorney to act in my name, place and stead to do everything that is required, as fully as if done by me personally, to register and obtain acknowledgement of the Assignment of Life Insurance Policy form(s), and accomplish the surrender of the life insurance polic(ies) identified below and negotiation of their cash values, and including any other requested information. Answers to questions may be provided by telephone or fax [number omitted here]. Power of Attorney also applies to stocks, bonds and other securities.

Company Name Policy Name and Number

_____ _____

 _____

 _____

number." Three of the accounts have been identified as securities accounts; the fourth was an insurance policy.

¶ 12. The second limited power of attorney was signed in August 1992. The typewritten text of the form was identical to the first, except that the last line was expanded to read, "Power of Attorney also applies to stocks, bonds, CD's, annuities, savings accounts, and other securities." "The American Funds" was typed in on the line under "company name," and only the number "57263159," identifying one document, was typed in under "policy name and number." This number was identical to a number written next to one of the securities accounts on the July limited power of attorney. None of the accounts listed on either of the powers of attorney was identified as a Putnam Investment account.

¶ 13. In July 1994, O'Hearn's securities license was revoked by the State of Wisconsin. The plaintiff-payee was not aware that O'Hearn had lost his license, and the plaintiff-payee continued as a client of Georgetown Financial.

¶ 14. In May 1995, Georgetown Financial opened an investment account for the plaintiff-payee with Putnam Investments. The account application was for an individual account and the plaintiff-payee was identified as the owner of the account. The mailing address listed on the application was "Eric M. Schmitz c/o Georgetown Financial Corp., 10134 N. Port Washington Rd., Mequon, WI, 53092." The application also stated that the registered investment advisor for the account was "C Lynn O'Hearn" of the investment firm "Ogilvie & Taylor." Telephone redemptions were authorized allowing Putnam to act upon instructions received from the plaintiff-payee or "any person claiming to act as [his] representative" who could provide specific information.

31

¶ 15. Mutual funds were sold from the Putnam account by telephone redemption in July 1996 and March 1998. On each occasion, Putnam issued a check and mailed it to the plaintiff-payee, in care of Georgetown Financial, as designated in the account application. The first check, dated July 12, 1996, was in the amount of $58,599.19. It was issued as follows:

Pay to the order of:

Eric M. Schmitz
c/o Georgetown Financial
10134 North Port Washington Road
Mequon, Wisconsin 53092

The second check, dated March 5, 1998, was in the amount of $6,173.21. It was issued in an identical manner.

¶ 16. O'Hearn presented both checks to Firstar Bank for deposit into a Georgetown Financial account. The larger check, presented on July 19, 1996, did not include an endorsement by or on behalf of the plaintiff-payee. The smaller check included an endorsement bearing the name of the plaintiff-payee that was alleged in the complaint to be a forged signature. Both checks were stamped with a Georgetown Financial deposit stamp and marked "for deposit only."

¶ 17. Firstar Bank deposited the face value of both checks into a Georgetown Financial account. At the time, Firstar Bank was unaware of the existence of either of the limited powers of attorney and admits that it did not rely on the limited powers of attorney when it deposited the two Putnam checks into the Georgetown Financial account.

¶ 18. The plaintiff-payee never received the funds deposited into the Georgetown Financial account.

O'Hearn has been convicted of criminal fraud, and Georgetown Financial has ceased to operate.

## II

¶ 19. The question presented by this case is whether Georgetown Financial had authority to endorse and deposit the two Putnam checks to its own account. The answer to this question turns on an interpretation of the two limited powers of attorney.

¶ 20. According to the plaintiff-payee, the circuit court and court of appeals misconstrued the language of the two limited powers of attorney when they failed to read the last sentence relating to investments narrowly, limited by the particular grant of authority regarding insurance policies in the first sentence. Moreover, asserts the plaintiff-payee, even if the powers of attorney did grant Georgetown Financial authority to endorse the two Putnam checks, the limited powers of attorney ceased to operate as a matter of law when O'Hearn, the chief executive officer of Georgetown Financial, lost his securities license and began to act against the plaintiff-payee's interest.

¶ 21. Firstar Bank responds that the circuit court and court of appeals properly construed the limited powers of attorney. It argues that the final sentence of the limited powers of attorney, providing that power of attorney "also applies" to securities and other investments, expressly granted Georgetown Financial broad authority to act on the plaintiff-payee's behalf with respect to the plaintiff-payee's financial affairs and included the power to do everything necessary to buy and sell any security or investment as fully as if done by the plaintiff-payee himself. Firstar Bank asserts that

33

Georgetown Financial was thus authorized to endorse the two Putnam checks at issue in this case on behalf of the plaintiff-payee.

¶ 22. Agency agreements are generally subject to the same rules of interpretation as other contracts.[7] Like the interpretation of a contract, the interpretation of a power of attorney ordinarily presents a question of law that this court determines independently of the circuit court and court of appeals but with the benefit of their analyses.[8]

¶ 23. Both the circuit court and the court of appeals construed the limited powers of attorney at issue in the present case to grant authority to Georgetown Financial to endorse the two Putnam checks. According to the court of appeals, the limited powers of attorney authorized Georgetown Financial to liquidate specific life insurance policies, but the final sentence in each power of attorney granted power of attorney over the plaintiff-payee's other investments and accounts without any limitations on scope.

¶ 24. We conclude that the expansive interpretation given the limited powers of attorney by the circuit court and court of appeals is not supported by the language of the documents. Rather, the language and structure of the limited powers of attorney support a narrow construction of the authority granted to Geor-

---

[7] Restatement (Second) of Agency § 32, at 114 (1958). *See, e.g., Estate of Smith v. United States,* 979 F.Supp. 279, 282 (D. Vt. 1997); *Burlington No. & Santa Fe Ry. Co. v. Burlington Res. Oil & Gas Co.,* 590 N.W.2d 433, 437, 439 (N.D. 1999).

[8] *RTE Corp. v. Maryland Cas. Co.,* 74 Wis. 2d 614, 621, 247 N.W.2d 171 (1976).

getown Financial. A narrow construction would not include the authority to endorse and deposit the two Putnam checks.

¶ 25. With the exception of the single final sentence in each power of attorney applying Georgetown Financial's power of attorney to a variety of types of financial accounts or investments in addition to insurance policies, every other aspect of each limited power of attorney is narrowly crafted. The documents are styled "limited" powers of attorney. The identical first sentence of each power of attorney—the line providing the greatest detail—authorizes Georgetown Financial to act in regard to life insurance policies "identified below." The printed text of both powers of attorney is followed by space for inserting the company name and the policy name and number.

¶ 26. Thus, in order to read the final sentence of the limited powers of attorney broadly enough to encompass any other investments and accounts of the plaintiff-payee, the final sentence has to be wrestled free from its context. Indeed, that is precisely what the circuit court and court of appeals did. The court of appeals explained: "[T]he limited powers of attorney in this case went on to *separately* grant Georgetown Financial the power of attorney with respect to 'stocks, bonds, CD's, annuities, savings accounts, and other securities.' This *additional* grant of authority was not limited in scope."[9]

---

[9] *Schmitz v. Firstar Bank Milwaukee,* 2002 WI App 123, ¶ 16, 254 Wis. 2d 732, 647 N.W.2d 379 (emphasis added).

¶ 27. The more natural reading of the two limited powers of attorney is to keep the final sentence within the narrow confines of the rest of the document.[10] That is, in context, the final sentence serves to modify the first sentence, explaining simply that the listed items "identified below" may also include securities and other financial accounts in addition to insurance policies. Only the insurance policies and investments listed in the limited powers of attorney are therefore covered by the document.

■

¶ 28. Our reading of the limited powers of attorney is supported by several factors. First, the very title of the documents, "Limited Power of Attorney," points to a narrow reading of the powers granted. Second, the general rule of interpretation is that powers of attorney are to be strictly construed and interpreted to grant only those powers that are clearly delineated or specified.[11] The limited powers of attorney in the present case do not explicitly authorize Georgetown Financial to endorse checks payable to the plaintiff-payee arising from a Putnam investment account.

---

[10] *See, e.g., Fort Dearborn Life Ins. Co. v. Holcomb,* 736 N.E.2d 578, 589 (Ill. App. 2000) ("No matter how the power is characterized, a 'catchall' provision will not operate to expand powers expressly limited in other portions of the same instrument.").

[11] *Praefke v. Am. Enter. Life Ins. Co.,* 2002 WI App 235, ¶ 9, 257 Wis. 2d 637, 655 N.W.2d 456; *First Nat'l Bank of Omro v. Winnebago County Agr. & Horticultural Ass'n,* 141 Wis. 476, 480, 124 N.W.2d 656 (1910); *see also Texas Soil Recycling, Inc. v. Intercargo Ins. Co.,* 273 F.3d 644, 651 (5th Cir. 2001) (applying Texas law); *O'Neal v. United States,* 258 F.3d 1265, 1275 (11th Cir. 2001) (applying Alabama law).

¶ 29. Third, the limited power of attorney form requires that the life insurance policies to be included within the grant of authority be listed in the document. The requirement that the insurance policies be listed extends to requiring that the other investments included in the final sentence be listed. Indeed the plaintiff-payee listed not only life insurance policies but specific securities. Requiring a listing of insurance policies and investments indicates that Georgetown Financial has authority only over assets listed on the powers of attorney. It simply does not make sense to say that a document that requires a list of individual policy names and numbers and then applies the power of attorney to other investments grants broad authority over *all* investment accounts, whether listed or not.

¶ 30. In short, the clear implication is that both of these limited powers of attorney grant Georgetown Financial authority over only those insurance policies and other investments (stocks, bonds, CDs, annuities, savings accounts, and other securities) specifically listed on the limited powers of attorney. Since neither limited power of attorney in the record lists a Putnam account, it is equally clear that Georgetown Financial did not have the authority to endorse either of the checks at issue in this case on behalf of the plaintiff-payee.[12]

---

[12] Firstar Bank suggested at oral argument that an additional power of attorney was likely signed giving Georgetown Financial authority over the Putnam accounts, even though it was not discovered and is not in the record. Firstar Bank asserted that discovery was complicated in this case because of the federal government's investigation of O'Hearn on criminal fraud charges. Firstar Bank pointed to the Putnam account application as evidence that the plaintiff-payee had an ongoing

¶ 31. Having determined that Georgetown Finan-
cial did not have the authority to endorse the two
Putnam checks, the remaining issue in this case is
whether Firstar Bank is liable to the plaintiff-payee for
the value of the two Putnam checks it deposited into a
Georgetown Financial account, one without the
plaintiff-payee's endorsement and the other with a
forged endorsement of the plaintiff-payee. We do not
reach a decision on Firstar Bank's liability here, how-
ever, as the parties have not adequately briefed and
argued the issues.

¶ 32. The plaintiff-payee's underlying claims
against Firstar Bank in the present action are for
conversion and negligence. Conversion is committed
when a person takes the property of another, without
the consent of the owner, in such a way that it
seriously interferes with the right of the owner to
control the property.[13]

---

relationship with Georgetown Financial and argued that the
plaintiff-payee would have given Georgetown Financial author-
ity, in the same manner as he previously did with the discovered
powers of attorney, over the Putnam account.

Firstar Bank's suggestion does nothing to bolster its
position in this case. First, to imply that another power of
attorney might exist specifically listing the Putnam account
supports the plaintiff-payee's claim that the limited powers of
attorney currently in the record only extend to those accounts
explicitly identified on the power of attorney. Second, a motion
for summary judgment will not be granted on the basis of pure
conjecture.

[13] *Prod. Credit Ass'n v. Nowatzski,* 90 Wis. 2d 344, 353, 280
N.W.2d 118 (1979).

¶ 33. The plaintiff-payee's brief in this court asserted that Firstar Bank was never a holder or owner of the larger Putnam check but merely a transferee, and as a transferee, it has no greater rights to the check than Georgetown Financial.[14] Firstar Bank did not brief the conversion issue in this court. Firstar Bank addressed only the issue of whether the limited powers of attorney authorized Georgetown Financial to endorse the Putnam checks.

¶ 34. Firstar Bank did argue before the circuit court, however, in its response in opposition to the plaintiff's motion for summary judgment, that if the plaintiff-payee prevailed on his argument that Georgetown Financial did not have the authority under the limited powers of attorney to endorse the checks in the present case, the question whether Firstar acted in good faith or in accordance with reasonable commercial standards under Wis. Stat. § 403.419(3) (1993–94) was a question of fact that would need to be tried. Wisconsin Stat. § 403.419(3) (1993–94) provides that a depositary bank will not be liable for conversion of a negotiable instrument if it has acted "in good faith and in accordance with the reasonable commercial standards" applicable to the respective business, here banking.[15]

---

[14] *See* Wis. Stat. §§ 403.201, 403.202, 403.301 (1993–94).

[15] The plaintiff-payee's amended complaint asserted a claim for conversion under Wis. Stat. § 403.420 (1996–97). Firstar Bank responded in its memorandum response in opposition to the plaintiff's motion for summary judgment before the circuit court that the plaintiff-payee's claim for conversion with regard to the larger check is actually governed by Wis. Stat. § 403.419(3) (1993–94). Section 403.419(3) stated the law on conversion of negotiable instruments applicable in Wisconsin in July 1996. Effective August 1, 1996, Wisconsin adopted revised Article III of the Uniform Commercial Code and the law on

¶ 35. While it appears clear that accepting a check when the payee's endorsement is missing is not in accordance with the reasonable commercial standards of banking and that the acceptance by a depositary bank of such a check for deposit is commercially unreasonable as a matter of law,[16] there is far less case law addressing who constitutes the payee when a check is made out to an individual in the care of an investment company.[17] Accordingly, we remand the issue of liability on the larger Putnam check to the circuit court for further proceedings.

¶ 36. A determination of liability on the smaller Putnam check is similarly inappropriate for summary judgment given the posture of the case. In short,

---

conversion of negotiable instruments was renumbered § 403.420. Thus, it appears that the first, larger check would be governed by § 403.419(3) (1993–94) while the second, smaller check is governed by § 403.420 (1996–97).

Wisconsin Stat. § 403.419(3) (1993–94) reads:

(3) Subject to the provisions of chs. 401 to 411 concerning restrictive endorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his or her hands.

[16] *See, e.g., Mid-Atl. Tennis Courts, Inc. v. Citizens Bank & Trust Co. of Maryland,* 658 F. Supp. 140, 142–43 (D. Md. 1987); *Great Am. Ins. Co. v. Am. State Bank,* 385 N.W.2d 460, 463 (N.D. 1986); *see also* 6A Ronald A. Anderson, *Uniform Commercial Code* § 3–419:72, at 95 (1998); William D. Hawkland & Lary Lawrence, 4 *Uniform Commercial Code Series* § 3–419:5, at Art. 3–912–16 (1999).

[17] *But see Geraldo v. First Dominican Mut. Life Ins. Co.,* 2002 WL 31002770, ¶ 41 (Ohio App. 2002) (unpublished opinion).

40

neither party briefed or argued whether it was appropriate to grant summary judgment on this claim if Georgetown was determined not to have authority to endorse and deposit the Putnam checks.

¶ 37. The plaintiff-payee has not moved for summary judgment on the $6,173.21 check (with the forged signature), asserting that a trial is required because liability depends on whether Firstar Bank was negligent, a question of fact. Firstar Bank moved for summary judgment on the claim regarding the smaller check but argued only that Georgetown Financial had authority under the powers of attorney to endorse and deposit the check. Firstar Bank offers no defense to support the conclusion that it was not liable for making payment on the smaller check once it has been determined that Georgetown Financial did not have authority to endorse the Putnam checks. "To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff-payee. If the defendant does not make out a prima facie case for summary judgment we need go no further."[18]

¶ 38. We therefore remand the issue of Firstar Bank's liability on the smaller check to the circuit court as well.

## IV

¶ 39. For the foregoing reasons, we hold that the language of the limited powers of attorney, properly construed, did not grant Georgetown Financial the authority to endorse the two checks at issue in this case. The circuit court's decision granting summary judgment to Firstar Bank is therefore reversed. The cause is

[18] *Kraemer Bros. v. U.S. Fire Ins. Co.,* 89 Wis. 2d 555, 566–67, 278 N.W.2d 857 (1979).

remanded to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 40. WILLIAM A. BABLITCH and JON P. WILCOX, JJ., did not participate.