COURT OF APPEALS
DECISION
DATED AND FILED

**September 9, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP322**

Cir. Ct. No. **2020GN38**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE CONDITION OF **W.B.**:

SAUK COUNTY,

PETITIONER-RESPONDENT,

V.

W. B.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge. *Affirmed.*

Before Kloppenburg, Graham, and Nashold, JJ.

¶1 NASHOLD, J. W.B. appeals circuit court orders for guardianship and protective placement. W.B. does not dispute that he meets the pertinent statutory criteria for guardianship and protective placement under WIS. STAT.

§§ 54.10(3)(a) (2019-20)[1] and 55.08(1), respectively. W.B. argues, however, that his health care power of attorney renders guardianship (and, by extension, protective placement) unnecessary. *See* WIS. STAT. § 54.46(1)(a)2. (the circuit court "shall dismiss the petition" for guardianship if "[a]dvance planning by the ward, as specified in [§] 54.10(3)(c)3., renders guardianship unnecessary"); § 54.10(3)(c)3. ("advance planning" includes a health care power of attorney under WIS. STAT. ch. 155); *see also* WIS. STAT. § 55.06 (protective placement may be ordered only for an individual "adjudicated incompetent"); WIS. STAT. § 54.01(16) (an "'[i]ndividual found incompetent' means an individual who has been adjudicated by a court as meeting the [guardianship] requirements of [§] 54.10(3)").

¶2      We disagree that W.B.'s health care power of attorney renders guardianship and protective placement unnecessary. Accordingly, we affirm.

## BACKGROUND

¶3      The following facts are not in dispute. In 2012, W.B. executed a durable power of attorney and a health care power of attorney, each naming his son, J.B., as agent. In 2015, W.B. suffered a stroke and was found to be incapacitated, and his health care power of attorney was activated.[2] At J.B.'s

---

[1]  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  Unless the power of attorney instrument states otherwise, "an individual's power of attorney for health care takes effect upon a finding of incapacity by 2 physicians … or one physician and one licensed advanced practice clinician, who personally examine the principal and sign a statement specifying that the principal has incapacity." WIS. STAT. § 155.05(2). "'Incapacity' means the inability to receive and evaluate information effectively or to communicate decisions to such an extent that the individual lacks the capacity to manage his or her health care decisions." WIS. STAT. § 155.01(8).

2

direction, W.B. was placed in a nursing home facility with twenty-four-hour supervision. W.B. has lived there since.

¶4 In 2020, the County filed the instant petitions for guardianship of the person and the estate and for protective placement. The County also filed accompanying reports of an examining physician and an examining psychologist. In addition, the circuit court ordered and received reports from a County social worker and an independent evaluator. According to one or more of these reports, W.B. had repeatedly expressed the wish to leave his nursing home, for example, by moving to a cabin that he owned in northern Wisconsin. W.B. stated that he planned to ask a member of the nursing staff to marry him and that the nurse had agreed to live with him and assist him. In reality, there was no such agreement, and W.B. could not safely care for himself. Thus, the nursing home sought the County's intervention on the grounds that guardianship and protective placement were necessary to prevent W.B. from moving out of the facility.

¶5 The circuit court held a hearing at which three examining experts and two County social workers testified to W.B.'s need for guardianship and protective placement under the statutory standards. *See* WIS. STAT. §§ 54.10(3)(a), 55.08(1). The parties further disputed the legal effect of W.B.'s existing powers of attorney. According to the County and W.B.'s guardian ad litem, the court needed to invalidate these directives and order guardianship and protective placement to prevent W.B. from moving out of the nursing home. The County argued, "[A]s the [c]ourt is well aware, the power of attorney cannot mandate placement, [so] when a proposed ward starts saying they're going to leave … something has to be done." W.B., in contrast, argued that under WIS. STAT. § 54.46(1)(a)2., the court was required to dismiss the petitions because W.B.'s health care power of attorney rendered them unnecessary. Specifically,

W.B. pointed to a provision in the health care power of attorney, which states, "[T]his designation will permit my designee to … authorize my admission to or transfer from a health care facility."

¶6     In attempting to resolve this dispute, the circuit court asked the parties whether, without a protective placement order, there was "any legal impediment to" W.B.'s leaving the facility. W.B.'s counsel repeatedly responded that he did not know the answer to this question; nor did he dispute the County's representation that a power of attorney instrument does not allow an agent to "mandate placement" over the principal's objection.

¶7     Based on these representations, the circuit court declined to dismiss the petitions, noting that the issue of whether W.B. could leave the nursing home without a protective placement order was "the whole reason that we're here." The court found that W.B. had made "statements to multiple people that he intended to go live at his cabin up north"; that W.B. had stated that he would marry someone who would take care of him; that no one had in fact agreed to undertake that role; and that W.B.'s failure "to actually leave the nursing home facility" was in part due to the "level of supervision that he currently receives there." The court further determined that W.B. met the statutory criteria for guardianship of the person and estate and for protective placement, and it entered those respective orders. The guardianship order revokes the powers of attorney and names J.B. as guardian. W.B. appeals.

## DISCUSSION

### I. *Principles of Law and Standard of Review*

¶8      The criteria for a guardianship are set forth in WIS. STAT. § 54.10(3)(a).  Pertinent here, to obtain guardianship of the person,[3] the petitioner must first prove that, "because of an impairment, the individual is unable effectively to receive and evaluate information or to make or communicate decisions to such an extent that the individual is unable to meet the essential requirements for his or her physical health and safety."   Sec. 54.10(3)(a)2. "'Impairment' means a developmental disability, serious and persistent mental illness, degenerative brain disorder, or other like incapacit[y]."   WIS. STAT. § 54.01(14).  Second, the petitioner must show that "[t]he individual's need for assistance in decision making or communication is unable to be met effectively and less restrictively through appropriate and reasonably available training, education, support services, health care, assistive devices, a supported decision-making agreement under [WIS. STAT.] ch. 52, or other means that the individual will accept."  Sec. 54.10(3)(a)4.  These elements must be established by clear and convincing evidence.  Sec. 54.10(3)(a).

¶9      The criteria for protective placement of an adult are as follows: (1) "[t]he individual has a primary need for residential care and custody"; (2) "the individual … has been determined to be incompetent by a circuit court"; (3) "[a]s a result of a developmental disability, degenerative brain disorder, serious and

---

[3] The guardianship order was for both W.B.'s person and his estate.  W.B. makes no argument specifically relating to the guardianship of his estate versus his person.  Therefore, we do not separately discuss the standard related to guardianship of the estate.

persistent mental illness, or other like incapacit[y], the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others"; and (4) the "disability … is permanent or likely to be permanent." WIS. STAT. § 55.08(1). These elements also must be proved by clear and convincing evidence. WIS. STAT. § 55.10(4)(d).

¶10 As previously noted, W.B. does not dispute that the evidence is sufficient to support orders for guardianship and protective placement. He maintains, however, that his health care power of attorney renders these orders unnecessary. Specifically, he relies on WIS. STAT. § 54.46(1)(a)2., which provides that the circuit court "shall dismiss the petition" for guardianship if it finds that "[a]dvance planning by the ward, as specified in [WIS. STAT. §] 54.10(3)(c)3., renders guardianship unnecessary." Section 54.10(3)(c)3., in turn, specifies that "advance planning" includes a health care power of attorney under WIS. STAT. ch. 155.[4]

¶11 The parties do not cite case law setting forth our specific standard for reviewing a circuit court's determination about whether "[a]dvanced planning

---

[4] Although W.B. frequently refers to both the guardianship and protective placement orders being rendered unnecessary by advance planning, we note that WIS. STAT. § 54.46(1)(a)2. addresses only whether *guardianship* is rendered unnecessary. Elsewhere in his brief, however, W.B. clarifies his position, arguing that, because the guardianship petition should have been dismissed, the protective placement petition necessarily should have been dismissed as well. *See* WIS. STAT. § 55.08(1)(b) (requiring a prior determination of incompetency for protective placement); WIS. STAT. § 55.075(3) (the petition for guardianship must be heard before the individual may be protectively placed); WIS. STAT. § 55.06 (protective placement "may be ordered … only for an individual who is adjudicated incompetent"); WIS. STAT. § 54.01(16) (an "'[i]ndividual found incompetent' means an individual who has been adjudicated by a court as meeting the [guardianship] requirements of [WIS. STAT. §] 54.10(3)"). We acknowledge that invalidation of the guardianship order would also invalidate the order for protective placement; however, to precisely track the language of § 54.46(1)(a)2., we discuss this issue only in terms of whether *guardianship* was rendered unnecessary by advanced planning.

by the ward … renders guardianship unnecessary." *See* WIS. STAT. § 54.46(1)(a)2. Nor, on our non-exhaustive research, have we located any directly pertinent case law. We conclude that, generally speaking, this specific determination represents an exercise of discretion, insofar as the court is required to consider the advance planning documents in context and dismiss the guardianship petition only if it "finds" that advanced planning renders guardianship unnecessary. Sec. 54.46(1)(a)2.; *cf.* ***E.C. v. Krueger***, No. 2015AP2196, unpublished slip op. ¶¶14-15 (WI App Dec. 13, 2016) (choice of guardian and suspension of powers of attorney reviewed for erroneous exercise of discretion).[5] At the same time, our analysis here hinges on questions of statutory and contract interpretation—both questions of law that we decide de novo. *See **Kasten v. Doral Dental USA, LLC***, 2007 WI 76, ¶19, 301 Wis. 2d 598, 733 N.W.2d 300. In addition, applying a de novo standard of review does not affect the outcome in this case, and our doing so will be most favorable to W.B., the appellant. Accordingly, we consider de novo whether W.B.'s health care power of attorney renders guardianship unnecessary.

*II. Health Care Power of Attorney Does Not Render Guardianship Unnecessary*

¶12 Before addressing the merits of the parties' arguments, we briefly note the following. The parties agree that this case turns on the answer to the following question: pursuant to W.B.'s health care power of attorney, can his agent require his continued placement in a nursing home over his objection? W.B. concedes that if the answer to this question is no, then the guardianship and

---

[5] Pursuant to WIS. STAT. RULE 809.23(3)(b), authored, unpublished opinions issued after July 1, 2009, may be cited for their persuasive value.

protective placement petitions were properly granted. As previously mentioned, however, when the circuit court asked this precise question—whether, in the absence of the guardianship and protective placement orders, there was "any legal impediment" to W.B.'s leaving the nursing home and "never coming back"— W.B.'s attorney repeatedly responded that he did not know. He likewise did not dispute the County's representation that a power of attorney instrument does not allow an agent to "mandate placement" over the principal's objection. Thus, we are cognizant of the fact that the court did not have before it the specific arguments that W.B. now advances on appeal—namely that, consistent with various statutory provisions, W.B.'s health care power of attorney grants his agent the authority to require W.B.'s continued placement in a nursing home over his objection. However, because the County does not make a forfeiture argument, we do not address whether forfeiture may apply, and we instead proceed to the merits. *See* ***State v. Tillman***, 2005 WI App 71, ¶18, 281 Wis. 2d 157, 696 N.W.2d 574 ("[T]he court's role in a conventional appeal is limited to addressing the issues briefed by appellate counsel."); ***Townsend v. Massey***, 2011 WI App 160, ¶23, 338 Wis. 2d 114, 808 N.W.2d 155 (the forfeiture rule is one of judicial administration, which appellate courts may overlook).

¶13 On appeal, W.B. argues that the following language from his health care power of attorney grants his agent, J.B., the authority to keep W.B. in a nursing home over his objection:

> *I [W.B.] fully understand, and intend, that this designation will permit my designee [J.B.] to make health care decisions and to provide, withhold, or withdraw consent on my behalf*; to apply for public benefits to defray the cost of healthcare; to have access to my records necessary to make decisions or apply for benefits; *and to*

> *authorize my admission to or transfer from a health care facility*.[6]   I specifically give my agent the power and authority to provide, withdraw, or withhold consent to the provision of life-prolonging procedures on my behalf; and to execute all documents, waivers and releases related to any of the foregoing and the powers set forth in the previous sentence.  My agent must act consistently with my desires as outlined in my Living Will, if any.

(Emphasis added.)

¶14     In response, the County argues that W.B.'s health care power of attorney is insufficient to require him to remain in a nursing home over his objection and that provisions in both the power of attorney and the Wisconsin Statutes make this clear.[7]   We agree.  We first note that, although the power of attorney allows J.B. to "authorize [W.B.'s] admission to" a health care facility, it does not say that J.B. (much less the nursing home) may keep W.B. there over his objection.  More significantly, however, other provisions in the power of attorney negate W.B.'s interpretation.

---

[6] "Health care facility" is defined to include a "nursing home" that is "licensed or approved by the [D]epartment [of Health Services]" under various statutory provisions.  WIS. STAT. § 155.01(6); *see also* WIS. STAT. § 50.01(3) (defining "nursing home").  The parties do not dispute that W.B.'s nursing home is a "health care facility," as that phrase is used in his health care power of attorney.

[7] We note that a health care agent may consent to the admission of the principal to long-term nursing or residential care only "if the power of attorney for health care instrument specifically so authorizes."  WIS. STAT. § 155.20(2)(c)2.c.  WISCONSIN STAT. § 155.30(3) provides a health care power of attorney form for Department of Health Services distribution (on which a principal may check "yes" or "no" to long-term admission to a nursing home), but W.B. did not use this form.  Instead, his health care power of attorney permits J.B. to "authorize [W.B.'s] admission to or transfer from a health care facility."  Because the County does not dispute the point, for purposes of appeal, we will assume without deciding that this language in W.B.'s power of attorney is sufficient to "specifically … authorize[]" J.B. to consent to W.B.'s admission to long-term care.  *See* § 155.20(2)(c)2.c.  The question in this case, however, is whether this authority allows J.B. to require that W.B. be kept in a nursing home over W.B.'s objection.

¶15    As the County notes, W.B.'s health care power of attorney begins with the following notice:  "You have the right to make decisions about your health care.  *No health care may be given to you over your objection*, and necessary health care may not be stopped or withheld if you object."[8]  (Emphasis added.)  This language mirrors the mandatory notice language of WIS. STAT. § 155.30(1) that must be included in health care power of attorney forms made available for use by individuals without legal counsel, and that may be included in health care power of attorney forms made available for use by individuals with legal counsel, *see* § 155.30(2).[9]

¶16    Despite this unambiguous language regarding the principal's rights to make health care decisions and to not receive care over the principal's objection, W.B. argues that these rights apply only to an individual who has *not* been deemed incapacitated.  In support of this position, W.B. relies on additional language contained in both his health care power of attorney and the mandatory notice provision of WIS. STAT. § 155.30(1).  For example, these sources explain that in order to avoid the "problem" that may arise when the principal becomes "physically or mentally unable to make decisions about [his or her] health care,"

---

[8] This and other notice provisions of the health care power of attorney and the Wisconsin Statutes are in all capitalization.  For ease of reading, we omit the capitalization.

[9] WISCONSIN STAT. § 155.30(2) provides:

> A power of attorney for health care instrument that is other than that specified in sub. (1) or (3) [both of which address health care power of attorney forms for public use] shall include either the notice specified in sub. (1) or a certificate signed by the principal's lawyer stating: "I am a lawyer authorized to practice law in Wisconsin. I have advised my client concerning his or her rights in connection with this power of attorney for health care and the applicable law."

the principal may execute a health care power of attorney to "specify the person whom [the principal] want[s] to make health care decisions for [the principal] if [the principal is] unable to make those decisions personally." *See id.* These sources further direct the principal to discuss his or her wishes and beliefs with the health care agent and set forth directives in the document. *See id.* Furthermore, these sources state that the power of attorney "is an important legal document" that gives the agent "broad powers to make health care decisions for" the principal. *See id.* According to W.B., this language "demonstrates" that an agent in J.B.'s position is authorized to require that the principal be kept in a nursing home over the principal's objection.

¶17    We disagree that the above-quoted language upon which W.B. relies overcomes the clear and unequivocal language in both WIS. STAT. § 155.30(1) and W.B.'s health care power of attorney that expressly informs him of his "right to make decisions about [his] health care" and that "no health care may be given to [him] over [his] objection." Notably absent from this language about W.B.'s rights is any requirement or qualification that W.B. must *not* have been deemed incapacitated in order to avail himself of these rights. "[T]he general rule of interpretation is that powers of attorney are to be strictly construed and interpreted to grant only those powers that are clearly delineated or specified." *Schmitz v. Firstar Bank Milwaukee*, 2003 WI 21, ¶28, 260 Wis. 2d 24, 658 N.W.2d 442.

¶18    Moreover, none of the language upon which W.B. relies addresses the specific situation here, involving an incapacitated principal who is able to, and does, express his wishes and intentions with respect to a specific health care option. In addition, W.B.'s position appears to be predicated on at least three premises that he fails to support: (1) that an agent's ability under a health care power of attorney to "authorize [the] admission" of an incapacitated principal also

includes the power to require the nursing home to keep the principal there against his wishes; (2) that incapacity necessarily equates to an inability to "make [any health care decisions] personally," *see* WIS. STAT. § 155.30(1); and (3) that an incapacitated principal gives up *all* rights to determine his or her health care treatment.

¶19    W.B. not only fails to support these assumptions in any meaningful way, but his position also contradicts additional language in his health care power of attorney and in WIS. STAT. § 155.30(1) indicating that an agent has a duty to ascertain the principal's wishes, regardless of whether the principal has been deemed incapacitated.  For example, a provision in both of these sources states, "*If your health care agent is unaware of your desires* with respect to a particular health care decision, he or she is required to determine what would be in your best interests in making the decision."  *See id.* (emphasis added).  Notably, this provision does not state, "*If your health care power of attorney instrument* does not address your desires…."  Instead, this provision broadly discusses a situation in which the agent is unaware of the principal's desires—presumably, because they were not communicated through the health care power of attorney or verbally by the principal himself—and the agent must therefore determine the principal's best interests.

¶20    It is also significant that W.B.'s health care power of attorney and WIS. STAT. § 155.30(1) expressly give him the right to revoke the power of attorney "at any time":

> If you wish to change your power of attorney for health care, you may revoke this document *at any time* by destroying it, by directing another person to destroy it in your presence, by signing a written and dated statement or by stating that it is revoked in the presence of two witnesses.

(Emphasis added.) This language is also consistent with WIS. STAT. § 155.40(1), which provides that "[a] principal may revoke his or her power of attorney for health care and invalidate the power of attorney for health care instrument at any time," and which sets forth various mechanisms for doing so, none of which involve any approval or other action on the part of the agent.

¶21 W.B. does not address the ability to revoke his own health care power of attorney, nor do we discern any limitation on W.B.'s ability to so revoke. W.B.'s ability to revoke "at any time" undermines his position that guardianship is rendered unnecessary because the health care power of attorney is sufficient to allow his agent (and the nursing home) to keep him in the nursing home against his wishes.

¶22 The above-referenced provisions of WIS. STAT. ch. 155 and W.B.'s power of attorney, granting him various retained rights over his health care, are consistent with several other statutory provisions as well. Importantly, the County directs us to WIS. STAT. § 155.20(5), which provides:

> The health care agent shall act in good faith consistently with the desires of the principal as expressed in the power of attorney for health care instrument *or as otherwise specifically directed by the principal to the health care agent at any time*…. In the absence of a specific directive by the principal *or if the principal's desires are unknown*, the health care agent shall, in good faith, act in the best interests of the principal in exercising his or her authority.

(Emphasis added.) W.B. asks us to construe the first sentence of this provision to mean that "the directions to be followed are those which the principal set forth in the power of attorney document or otherwise discussed with the agent *prior to incapacitation*," but this interpretation is contrary to the statute's plain meaning. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271

Wis. 2d 633, 681 N.W.2d 110 (statutory interpretation begins with the language of the statute; if the meaning is plain, our inquiry ordinarily ends). The plain meaning of the phrase "at any time" is clearly not "at any time prior to becoming incapacitated." Rather, the plain meaning of "at any time" is "at any time." If the legislature intended this provision to mean what W.B. says it does, the legislature could have included the limiting language that W.B. advances. *See **id.***, ¶44 ("We assume that the legislature's intent is expressed in the statutory language."). Instead, the language of § 155.20(5) is consistent with the mandatory notice provisions of WIS. STAT. § 155.30(1)—language which indicates that the principal's expressed wishes must be respected. *See **Kalal***, 271 Wis. 2d 633, ¶46 (we examine the plain meaning of the operative statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes").

¶23 Other statutory provisions support the County's interpretation. For example, WIS. STAT. § 155.20(1) provides:

> Unless the power of attorney for health care instrument otherwise provides and except as specified in [inapplicable provisions], the health care agent who is known to the health care provider to be available to make health care decisions for the principal has priority over any individual *other than the principal* to make these health care decisions.

(Emphasis added.) In addition, WIS. STAT. § 155.30(3) mandates that the following language be included in health care power of attorney forms that the Department of Health Services distributes to various entities, including hospitals and nursing homes:

CREATION OF POWER OF ATTORNEY
FOR HEALTH CARE

I,…. (print name, address and date of birth), being of sound mind, intend by this document to create a power of attorney for health care. My executing this power of attorney for health care is voluntary. *Despite the creation of this power of attorney for health care, I expect to be fully informed about and allowed to participate in any health care decision for me, to the extent that I am able.* For the purposes of this document, "health care decision" means an informed decision to accept, maintain, discontinue or refuse any care, treatment, service or procedure to maintain, diagnose or treat my physical or mental condition.

….

GENERAL STATEMENT OF AUTHORITY GRANTED

….

*If I am unable*, due to my incapacity, to make a health care decision, my health care agent is instructed to make the health care decision for me, *but my health care agent should try to discuss with me any specific proposed health care if I am able to communicate in any manner, including by blinking my eyes. If this communication cannot be made, my health care agent shall base his or her decision on any health care choices that I have expressed prior to the time of the decision. If I have not expressed a health care choice about the health care in question and communication cannot be made*, my health care agent shall base his or her health care decision on what he or she believes to be in my best interest.

(Emphasis added.) All of the above statutory provisions are consistent with the language in W.B.'s health care power of attorney notifying him that he has the "right to make decisions about [his] health care" and that "no health care may be given to [him] over [his] objection." *See also* § 155.30(1).

¶24 W.B. leans heavily on a separate statutory provision, WIS. STAT. § 155.05(4), which states, "The desires of a principal *who does not have incapacity* supersede the effect of his or her power of attorney for health care at all

15

times." (Emphasis added.) W.B. construes this provision to mean that the desires of a principal who *has* been found incapacitated under § 155.05(2) *do not* supersede the effect of his or her power of attorney. This interpretation is unpersuasive, given that: (1) this provision does not in fact specify how the desires of an incapacitated principal affect the power of attorney; and (2) the statutory provisions set forth above indicate that the principal's expressed wishes are to be considered, if not followed, at all times.

¶25 Finally, W.B. directs our attention to WIS. STAT. §§ 55.055 and 50.06, arguing that "[t]he legislature has required immediate action from the county in specific situations in which an incapacitated or incompetent individual objects to placement in a nursing home or other facility" but that "the situation in this case—involving admission by a health care agent—is not among them." W.B. notes that, pursuant to § 55.055(3), when a court-appointed guardian admits an incompetent individual who is not subject to a protective placement order to a nursing home or other facility and that individual "verbally objects to or otherwise actively protests the admission," the county must visit the individual within seventy-two hours and, if the objection persists: (1) attempt to have the individual released, (2) comply with the procedures for emergency placement under WIS. STAT. § 55.135, or (3) file a petition for protective placement. Similar procedures are provided for under § 50.06(2)(d) for an incapacitated individual objecting to admission to a facility by a family member or close friend who is not a guardian or health care agent.

¶26 W.B. argues that "the fact that there is no similar statute requiring intervention for an incapacitated individual objecting to admission made by a health care agent demonstrates that the agent's decision trumps that of the incapacitated principal." But W.B.'s interpretation does not follow because—as

discussed above—WIS. STAT. ch. 155 actually provides protections to the principal in the scenario present here. Thus, the fact that ch. 155 does not mirror the provisions of §§ 55.055(3) and 50.06(2)(d) ultimately does not advance W.B.'s position. Moreover, these provisions actually appear to undermine W.B.'s position, insofar as they suggest that incapacitated or incompetent individuals who are not protectively placed retain the right to object to admission to a nursing home and that their wishes must be taken seriously, despite their incapacity or incompetence.

¶27 As previously noted, W.B. concedes that, if his agent J.B. cannot require his continued placement in a nursing home over his objection, then the petitions for guardianship and protective placement were properly granted. Because we have determined that neither WIS. STAT. ch. 155 nor W.B.'s health care power of attorney grants J.B. this power, we conclude that the orders for guardianship and protective placement must be affirmed.

## CONCLUSION

¶28 For all of the reasons stated above, we affirm the circuit court orders for guardianship and protective placement.

*By the Court.*—Orders affirmed.

Not recommended for publication in the official reports.