ALEXOPOULOS, Executor of the Estate of Vasilios Diaman-topoulos, Respondent, v. DAKOURAS, Appellant.

*No. 134. Argued September 8, 1970.—Decided October 6, 1970.*
(Also reported in 179 N. W. 2d 836.)

34

For the appellant there was a brief by *Brady, Pachefsky & Sullivan,* attorneys, and *Jerome F. Pogodzinski* of counsel, all of Milwaukee, and oral argument by *Robert J. Brady.*

For the respondent there was a brief by *Pfannerstill, Camp & Tyson* of Wauwatosa, and oral argument by *Mark M. Camp.*

HEFFERNAN, J. The inconsistency between the defenses asserted by the defendant in his brief before this court and the position taken by defendant's counsel on oral argument make the analysis of the proffered defense difficult. In the brief of the defendant it is contended that the conservatorship proceedings were res judicata in this action. Defendant appears to contend that the discovery initiated by the conservator was in fact an action for accounting and that, since some testimony was taken and receipts for some expenditures were apparently presented, the action presently brought in circuit court was barred by the earlier county court conservatorship proceedings.

It should be pointed out at the outset that res judicata was not pleaded in this action and was not raised by the defendant until his motion to dismiss at the end of the plaintiff's case. The defense of res judicata cannot be raised even where it is applicable by the method employed by the defendant herein. We have frequently stated that where res judicata is raised as a defense it must be pleaded and proved. In *Lowe v. Laursen* (1930), 201 Wis. 309, 230 N. W. 75, we pointed out that a trial court could not grant a motion to dismiss on the grounds of a former adjudication or res judicata and that, if the defendant wishes to interpose that defense, it must be pleaded and proved as an affirmative defense. Accordingly, we conclude that the matter of res judicata was not properly raised. Moreover, we think it apparent that defense counsel could not have meritoriously raised this defense even though the proper procedural devices had been employed, inasmuch as the earlier conservatorship discovery proceedings did not rise to the dignity of an action but was a part of the conservator's function in marshalling the assets.

The trial judge herein properly characterized the earlier discovery proceedings when he stated:

"This was no more than a discovery proceeding, and an incomplete one at that. Decedent died within two

months thereafter. Nothing was adjudicated, there was no judgment. No one's rights were determined in that proceeding."

This conclusion of the trial judge comports with this court's statement in *Cohan v. Associated Fur Farms, Inc.* (1952), 261 Wis. 584, 598, 53 N. W. 2d 788:

" 'A final valid judgment on the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action; identity of the thing sued for, of the causes of action, of the parties to the action, and of the quality or capacity in which the parties sue or are sued is essential to the application of the doctrine.' 50 C. J. S., Judgments, p. 16, sec. 598."

We conclude, therefore, in accordance with well established principles that, there being no former action and no judgment growing out of the conservator's discovery proceedings, res judicata is not applicable as a defense herein even if it were raised by a proper affirmative pleading.

In fairness to the attorney who presented the oral argument, not the author of the brief, the defense of res judicata was abandoned at oral argument. Rather, counsel at oral argument asserted the defense that the circuit court was without jurisdiction to hear the accounting because at the time of the commencement of the action in circuit court the conservatorship had not been terminated in the probate branch of the county court and was not in fact terminated until two years after the commencement of the circuit court action.

It should also be pointed out that, whatever the nature of the conservatorship proceedings, at no time was "an action pending" in the county court. Moreover, it seems clear that, upon the death of the ward, the conservatorship immediately terminated and the county court lost all jurisdiction by virtue of that proceedings except for the accounting required of the conservator for the period of his trust. It is conceded that the county court

and the circuit court had concurrent subject matter jurisdiction over the action here undertaken. It is apparent from the facts recited above that the county court had never in fact assumed jurisdiction over the conversion action and was in fact bereft of any authority by virtue of the death of the ward to proceed with any action by the conservator, and that the circuit court had full jurisdiction uninhibited by the principle of comity which restrains a court having concurrent jurisdiction from proceeding with a matter already commenced in another court. It is clear that jurisdiction was properly vested in the circuit court for Milwaukee county.

At the trial of the case the plaintiff relied heavily upon the godfather-godchild relationship and contended that this gave rise to a fiduciary relationship between the parties. The testimony at trial, in our opinion, is insufficient for us to conclude that, as a matter of law, the relationship arising from that religious practice gives rise to a special obligation on the part of a godchild, nor do we think that the exploration of that relationship is necessary to a proper determination of the case. It is undisputed and the record shows that Barber Bill appointed William Dakouras as his attorney-in-fact by virtue of an executed "power of attorney." A power of attorney creates an agency relationship. 3 Am. Jur. 2d, *Agency*, p. 433, sec. 23, summarizes uniform holdings of appellate courts which have discussed the nature of the relationship that arises when a power of attorney is executed. That section defines power of attorney as:

". . . an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal."

The power of attorney is simply a written document authorizing the person to whom it is granted to act as the agent or attorney-in-fact for the principal. It is

evidence that the holder of the power of attorney may act as the agent for the principal to the extent set forth therein.

The power of attorney in this case authorized William Dakouras to receive "for me and in my name, place and stead . . . all sums of money" which shall be owed the principal or which shall become due and payable to the principal, and for Barber Bill and in his name to "deal in any property" and "transact . . . business of what nature and kind soever."

Quite aside from general principles, the reading of the power of attorney makes it clear that the agency was for the benefit of Barber Bill and not for the agent. There is nothing therein that even arguably could exculpate Dakouras from the usual obligations of an agent to account to his principal or his principal's representative for all sums which come into his hands. Restatement, 2 *Agency* 2d, p. 185, sec. 382, sets forth the applicable rule:

"Unless otherwise agreed, an agent is subject to a duty to keep, and render to his principal, an account of money or other things which he has received or paid out on behalf of the principal."

"Comment: . . .
"*e* . . . If the principal proves or the agent admits that the agent has come into possession of money or other thing for the principal, the agent has the burden of proving that he has paid it to the principal or disposed of it in accordance with his authority."

It is agreed that "agency is the fiduciary relation." Restatement, 1 *Agency* 2d, p. 7, sec. 1.

Despite these unquestioned principles of law, the defendant asserts the bizarre argument that the language of the power of attorney quoted above was tantamount to a gift because the attorney-in-fact had the same authority to dispose of the money in the same manner that the principal could do personally. Defendant equates this with an unrestricted power of disposition. The

instrument in question falls far short of constituting such authority. A far more detailed exculpation of the agent from a duty to account would be necessary to exonerate Dakouras from the obligations imposed upon him by law. The document granted the power to the agent to deal with third parties on behalf of his principal.

The purpose of a simple power of attorney which does not by its very terms specifically provide for a gift over or an unlimited or unbridled power of disposition is to evidence the authority of the agent to third parties with whom the agent deals. The document was proper and sufficient to confer that authority on William Dakouras. It authorized him to withdraw deposits from the bank in the name and in the stead of the principal, Vasilios Diamantopoulos, and the bank properly accepted it as such; but a document of this kind falls far short of granting the attorney-in-fact the power to dispose of the assets for his own purposes.

Inasmuch as the agent herein has failed to account for his principal's funds, he is liable for conversion. 3 C. J. S., *Agency*, p. 50, sec. 163b; *Importsales, Inc. v. Lindeman* (1957), 231 La. 663, 92 So. 2d 574; *Manufacturers' Casualty Ins. Co. v. Mink* (1943), 129 N. J. L. 575, 30 Atl. 2d 510.

We need not characterize the relationship between principal and attorney-in-fact as a "trust" to conclude that by analogy the fiduciary obligation of an agent and a trustee impose similar duties, although the obligation of a trustee is usually to account to the beneficiaries of the trust rather than the settlor of the trust. The duty of an agent is to account to his principal. Both agents and trustees are fiduciaries. Restatement, 1 *Agency* 2d, p. 62, sec. 14 B; *Samia v. Central Oil Co. of Worcester* (1959), 339 Mass. 101, 158 N. E. 2d 469. At page 126, the Massachusetts court stated:

"An agent or fiduciary is under a duty to keep and render accounts and, when called upon for an accounting,

has the burden of proving that he properly disposed of funds which he is shown to have received for his principal or trust."

Professor Scott in his treatise on trusts, 2 Scott, *Trusts* (3d ed.), pp. 1399, 1400, sec. 172, points out the rationale of placing the full burden for accounting upon the fiduciary:

"The trustee alone is in a position to know all the facts concerning the administration of the trust, and obviously he cannot be permitted to gain any possible advantage from his failure to keep proper records."

In the Wisconsin case, *Estate of Martin* (1963), 21 Wis. 2d 334, 342, 124 N. W. 2d 297, we stated the standards to be applied in judging the account of a trustee:

"The final account . . . should show in detail the items expended and show when, to whom, and for what purposes the payments were made so the beneficiaries can make a reasonable test of the accuracy of the accounts. The accounts should be clear and accurate and if they are not, all presumptions are against the trustee and all obscurities and doubts are to be taken adversely to him."

The policy set forth above is applicable to the instant case. The executor's proof established beyond peradventure that the funds deposited in Barber Bill's account had come into the hands of the agent Dakouras. By the failure of the defendant to present any proof whatsoever he foreclosed himself of the opportunity to present an accounting and chose rather to rely upon the erroneous legal proposition that under the circumstances he had no legal duty to account for the funds. The case thus reaches us in a posture where the plaintiff has presented a prima facie case, factually uncontested by the defendant, which is sufficient to show the conversion of the funds entrusted to the agent.

*By the Court.*—Judgment affirmed.