Helen F. LOSEE, Plaintiff-Appellant,

v.

Marine BANK, Defendant-Respondent.

Court of Appeals

*No. 2004AP1938. Oral argument June 1, 2005.
—Decided July 13, 2005.*

2005 WI App 184

(Also reported in 703 N.W.2d 751.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs and oral argument of *Catherine A. La Fleur*, of *Halling & Cayo, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief and oral argument of *R. Timothy Muth* of *Reinhart, Boerner, Van Deuren, S.C.* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Helen F. Losee appeals from a summary judgment granted in favor of Marine Bank. Helen is seeking to recover amounts held in a certificate of deposit at Marine Bank. Helen's son, John F. Losee, Jr., acting pursuant to a Durable Power of Attorney for Financial Matters (POA), executed two Assignment of Deposit Accounts which assigned a certificate of deposit account issued by Marine Bank to Helen in the amount of $230,552.61. John did so in order to secure loans for his personal business.

¶ 2. Helen argues that John was self-dealing when he executed the assignments and therefore the assignments are unenforceable pursuant to our deci-

sion in *Praefke v. American Enterprise Life Insurance Co.*, 2002 WI App 235, 257 Wis. 2d 637, 655 N.W.2d 456, which prohibits self-dealing not specifically permitted in the POA. Based on John's self-dealing, Helen argues that Marine Bank unlawfully converted the funds on deposit for its own use in satisfying the debts of John's business.

¶ 3. We conclude that John engaged in unauthorized self-dealing as a matter of law. While Helen herself executed the initial mortgage and assignment of rents without implicating the POA, John's further actions as to the form of the collateral were motivated by his own business exigencies and in disregard of Helen's best interest. The simple fact of unauthorized self-dealing in a POA relationship is enough to void the assignments of the certificate of deposit to Marine Bank. Therefore, we reverse the grant of summary judgment to Marine Bank on that basis. We remand for the trial court to address the effect, if any, of John's self-dealing on Helen's conversion claim against Marine Bank.

## *FACTS*

¶ 4. In 1994, Helen, a widow, executed a POA document appointing John, one of her four children, as her attorney-in-fact. In October 1997, John's company, JFL Manufacturing, Inc., obtained a $75,000 loan from Marine Bank. John asked Helen to provide collateral for that loan in the form of a mortgage and assignment of rents covering a condominium she owned. Helen agreed and signed the mortgage and assignment of rents on October 20, 1997. The terms of the mortgage provided for the securing of "all future amounts Lender in its discretion may loan to Borrower, . . . however, in

no event shall such future advances (excluding interest) exceed in the aggregate $1,000,000."

¶ 5. Later, JFL Manufacturing began encountering financial difficulties. On April 12, 2001, the mortgage Helen signed was used to secure an additional $600,000 loan to JFL Manufacturing; a month later, the mortgage again was used to secure an additional $200,000 loan to JFL Manufacturing. Helen had begun mentally deteriorating from the effects of dementia by the time the additional loans were made, and John did not discuss the increase in JFL Manufacturing's credit with her. John signed for the added indebtedness both in his capacity as Helen's POA and as president of JFL Manufacturing.

¶ 6. In October 2001, John, as Helen's POA, asked Marine Bank to release her condominium from the mortgage and assignments of rents so that it could be sold. Marine Bank agreed to release the mortgage and condominium provided that the net proceeds of the sale be placed in a certificate of deposit assigned to Marine Bank. On October 4, 2001, acting as Helen's POA, John executed an Assignment of Deposit Account with Helen as the grantor, JFL Manufacturing as the borrower and Marine Bank as the lender. Then on October 8, 2001, John executed another Assignment of Deposit Account, again naming Helen as grantor, himself as POA, JFL Manufacturing as the borrower and CIB Marine Capital, LLC, as the lender. (CIB Marine Capital is a different company than Marine Bank but is related to it.) The proceeds from the sale of Helen's condominium, and the amount placed in the certificate of deposit, were $230,552.61. John testified at deposition that he agreed to grant Marine Bank the security interest in the certificate of deposit so as to continue the operation of his business. He also testified that he believed making

that assignment limited Helen's financial flexibility if his business should fail and that Marine Bank was "extremely involved" in all of his business survival attempts. JFL Manufacturing later defaulted on its loans and Marine Bank enforced its security interest in the entire amount of the certificate of deposit.

¶ 7.  At John's behest, Helen filed this action against Marine Bank requesting declaratory relief pursuant to WIS. STAT. § 806.04 (2003–04).[1] Helen argued that because the POA did not specifically permit self-dealing, the assignments by John of the certificate of deposit were unenforceable and void pursuant to *Praefke*. Helen additionally argued that Marine Bank unlawfully converted the funds on deposit to its own use to satisfy debts of JFL Manufacturing.

¶ 8.  Helen moved for judgment on the pleadings, which motion was denied after a hearing. Marine Bank subsequently moved for summary judgment. Helen opposed Marine Bank's motion and requested summary judgment in her favor.

¶ 9.  The trial court concluded that John had not engaged in self-dealing, stating that "[John] did not use his durable power of attorney to make a gift to himself or on his behalf to [Marine Bank]. Rather, [John] used his power to change the form of the collateral, but did nothing to change the obligation itself that [Helen] had already established with [Marine Bank]." The trial court granted Marine Bank summary judgment on the self-dealing issue and, as a result, did not reach the conversion issue. Helen appeals.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

### DISCUSSION

¶ 10.    Our review of a trial court's grant of summary judgment is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 316–17, 401 N.W.2d 816 (1987). In assessing whether summary judgment is appropriate, we first determine whether the complaint states a claim, and, if so, whether there are any genuine issues of material fact for trial. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Wis. Stat. § 802.08(2). An appellate court will reverse a summary judgment if the record reveals that material facts are in dispute or if the trial court misapplied the law. *Schmitz v. Firstar Bank Milwaukee*, 2003 WI 21, ¶ 6, 260 Wis. 2d 24, 658 N.W.2d 442.

¶ 11.    We turn first to the issue of whether John was self-dealing while acting pursuant to the POA. Helen argues that this court's decision in *Praefke* mandates a conclusion that, because the POA did not expressly permit John to execute the assignment of deposit accounts for the benefit of his company, his actions in that regard constituted unauthorized self-dealing. Since the assignments to Marine Bank were made without authority, Helen's argument continues, they are void and Marine Bank has no entitlement to her funds. Marine Bank argues that *Praefke* does not apply because Helen herself agreed to the obligations well before John's actual exercise of the POA. The bank asserts that the certificate of deposit simply was an alternate form of collateral.

444

¶ 12. The heart of the parties' arguments does not implicate any genuine issue of material fact. Therefore, the only question on appeal is whether the trial court properly applied the law in determining that no self-dealing occurred. *See Schmitz*, 260 Wis. 2d 24, ¶ 6.

¶ 13. Helen contends that this court's decision in *Praefke* controls this case. However, the trial court agreed with Marine Bank that *Praefke* does not apply at all. A brief review of *Praefke* is useful. Praefke, the daughter of Glasslein's long-time friend, became Glasslein's attorney-in-fact pursuant to a durable POA. *Praefke*, 257 Wis. 2d 637, ¶ 2. After Glasslein later was diagnosed with dementia, Praefke, acting as attorney-in-fact, changed the payable-on-death beneficiary designations on Glasslein's assets to herself. *Id.*, ¶ 3. When Glasslein died, Praefke made claim for the proceeds of Glasslein's annuity accounts. *Id.*, ¶ 4. Praefke argued that the broad grant of authority of the durable POA included the authority to make gifts to herself. *Id.*, ¶ 6.

¶ 14. This court rejected Praefke's arguments. Following *Alexopoulos v. Dakouras*, 48 Wis. 2d 32, 179 N.W.2d 836 (1970), we concluded that Praefke lacked authority to make gifts to herself because the broad language of the POA agreement did not contain express written authorization. *Praefke*, 257 Wis. 2d 637, ¶ 1. Setting forth a "bright-line rule," we held that "an attorney-in-fact may not make gratuitous transfers of a principal's assets unless the power of attorney from which his or her authority is derived expressly and unambiguously grants the authority to do so." *Id.*, ¶ 20. In so doing, we noted that the basic policy concern underlying the proscription against self-dealing is "the potential for fraud that exists when an agent acting pursuant to a durable power of attorney has the power to make gifts, especially after the principal becomes

incapacitated." *Id.*, ¶ 12. Accordingly, we held that before any self-dealing will be deemed permissible, it "must be specifically authorized in the instrument." *Id.*

¶ 15. We agree that this case is not precisely like *Praefke* where the agent attempted to shield her self-gifting actions with the broad language of the POA document. It is more *Praefke's* policy underpinnings which we find instructive and persuasive.

¶ 16. Executing a POA document creates an agency relationship between agent and principal. *See* WIS. STAT. §§ 243.07(1)(a) and 243.10(1). "It is a well-established tenet of agency law that an attorney-in-fact has a fiduciary obligation to the principal." *Praefke,* 257 Wis. 2d 637, ¶ 9; *see also Alexopoulos,* 48 Wis. 2d at 40–41. The POA document authorizes the holder of the POA to undertake acts for the benefit of the principal, not for the agent. *See Alexopoulos,* 48 Wis. 2d at 40. The agent's duty is to act solely for the benefit of the principal in all matters connected with the agency, even at the expense of the agent's own interests. *Bank of Cal. v. Hoffmann,* 255 Wis. 165, 171, 38 N.W.2d 506 (1949). The powers of the attorney-in-fact are strictly construed and are interpreted to grant only those powers that are clearly delineated or specified. *Praefke,* 257 Wis. 2d 637, ¶ 9.

¶ 17. Helen executed the POA document in 1994. In 1997, without invoking the POA, Helen personally executed an assignment of rents and a mortgage against her condominium. Both were done to help John cover his business expenses, which at the time totaled about $75,000. In 2001, John's business encountered serious difficulties. In an attempt to address the problems, John used the POA to secure from Marine Bank a working capital line, a $600,000 term loan and $200,000

in mezzanine financing. John did not discuss with Helen the fact that he used her condominium as collateral to secure the added financing. She had begun deteriorating mentally and John testified that he did not think she was capable of understanding the financial transactions at that time.

¶ 18.   Marine Bank focuses on the fact that Helen herself executed the mortgage without invoking the POA. The bank argues that John's subsequent assignments to it of the certificate of deposit merely converted one form of collateral for another and did nothing to change any obligation Helen already had assumed. We are not persuaded by this ordering of the facts. The critical point is that John used his POA status to make decisions with an eye toward his own business interests. Whether or not Helen suffered any harm or prejudice actually is beside the point. Indeed, proof of injury to the principal is unnecessary.

> [A] principal need not prove any injury to avoid a transaction in which the agent has acted as an adverse party without his [or her] knowledge and consent. The principle is one of prevention, not remedial justice, which operates however fair the transaction may have been—however free from every taint of moral wrong.

*Bank of Cal.*, 255 Wis. at 171a (quoted source omitted).

¶ 19.   Nothing suggests that any of John's actions were motivated by greed. The fact remains, however, that his interests—not Helen's—prompted his decisions. This represents a breach of John's fiduciary duty to Helen and falls within the classic definition of self-dealing, "Participation in a transaction that benefits oneself instead of another who is owed a fiduciary

447

duty." BLACK'S LAW DICTIONARY 1390 (8th ed. 2004). "Absolute fidelity and loyalty to the interests of his [or her] principal is the first duty and the highest obligation of an agent." *Bockemuhl v. Jordan,* 270 Wis. 14, 18, 70 N.W.2d 26 (1955) (quoted source omitted). John did not act solely for the benefit of Helen in all matters connected with his agency, "even at the expense of [his] own interest." *See Praefke,* 257 Wis. 2d 637, ¶ 9; *see also Bank of Cal.,* 255 Wis. at 171. To the contrary, John undertook his course of action for the express purpose of continuing the operation of his company, despite knowing that assigning the security interest limited Helen's financial flexibility.

¶ 20.   John's actions plainly amounted to self-dealing unauthorized by the POA document. We note that John acknowledges as much since, as Marine Bank points out in its brief, John testified that it was his idea for Helen to file this lawsuit against the bank. Since John essentially alleges his own self-dealing, we think Marine Bank is hard-pressed to argue that Helen should not prevail.

¶ 21.   In sum, we conclude that John's exercise of the POA clearly points to unauthorized self-dealing as a matter of law. We therefore reverse the grant of summary judgment to Marine Bank. We hold only that John engaged in self-dealing. We make no determination as to how this affects Helen's conversion claim against Marine Bank. We remand for further proceedings on that question.

*By the Court.*—Order reversed and cause remanded with directions.