# 2019 WI App 62

## COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP2024

Complete Title of Case:

**WISCONSIN DEPARTMENT OF REVENUE,**

**PLAINTIFF-APPELLANT,**

**V.**

**MICROSOFT CORPORATION,**

**DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | October 31, 2019 |
| Submitted on Briefs: | May 24, 2019 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark S. Zimmer* of *Wisconsin Department of Revenue*, Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Timothy G. Schally* of *Michael Best & Friedrich LLP*, Milwaukee, and *Jeffrey A. Friedman, Daniel H. Schlueter* and *Ted W. Friedman* of *Eversheds Sutherland (US) LLP*, Washington, DC. |

COURT OF APPEALS
DECISION
DATED AND FILED

October 31, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP2024**

STATE OF WISCONSIN

Cir. Ct. No.  2017CV2214

IN COURT OF APPEALS

---

WISCONSIN DEPARTMENT OF REVENUE,

PLAINTIFF-APPELLANT,

V.

MICROSOFT CORPORATION,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: SHELLEY J. GAYLORD, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

¶1     FITZPATRICK, P.J. The Wisconsin Department of Revenue (DOR) appeals a Dane County Circuit Court order that affirmed a decision of the Tax Appeals Commission.  The Commission determined that royalties Microsoft Corporation received from licensing its software to original equipment

manufacturers (OEMs) that are not located in Wisconsin, but whose products are used in Wisconsin, should not be considered in calculating Microsoft's franchise tax liability to the State of Wisconsin for the tax years 2006 to 2009 under WIS. STAT. § 71.25(9)(d) (2005-06).[1]  That statutory subpart concerns the franchise taxation of sales of intangibles if the income-producing activity occurs in Wisconsin.  *See* § 71.25(9)(d).  The DOR argues that the Commission erred in failing to apply a statutory exception to § 71.25(9)(d), under which franchise taxation of computer software occurs if a "licensee" uses the software in Wisconsin.  *See* § 71.25(9)(df).  According to the DOR, the § 71.25(9)(df) exception requires that the royalties Microsoft received from OEMs not located in Wisconsin must be considered in calculating Microsoft's franchise tax liability because the persons who use those OEMs' products in Wisconsin were, in effect, Microsoft's licensees.  We reject the DOR's arguments and, therefore, affirm the circuit court's order that affirmed the Commission's decision.

## BACKGROUND

¶2      The following facts are not disputed on appeal.

¶3      Microsoft is engaged in the business of developing, distributing, and licensing computer software.   In this context, OEMs are businesses that

---

[1] The versions of the statutes in effect at the time of the tax assessments in this case were versions 2003-04, 2005-06, and 2007-08.  During the 2006 to 2009 tax years, the legislature made changes to the statutory sections at issue in this case.  *See, e.g.*, 2005 Wis. Act 25, § 1349 (creating WIS. STAT. § 71.25(9)(df) effective July 27, 2005); 2009 Wis. Act 2, § 126 (repealing § 71.25(9)(d) effective March 6, 2009).  However, the parties treat the relevant statutory language as having been identical for all pertinent tax years, and we do the same.  Accordingly, all statutory references in this opinion are to the 2005-06 version of the Wisconsin Statutes unless otherwise noted.

manufacture, or at least assemble, computers, which incorporate Microsoft software. Examples of OEMs that incorporate Microsoft software include Dell and Hewlett Packard.

¶4 Relevant to the tax years in dispute, Microsoft entered into software copyright license agreements with OEMs.[2] Some OEMs with which Microsoft entered into license agreements were based in Wisconsin, but the vast majority were not based in Wisconsin. Because this appeal does not concern OEMs based in Wisconsin, for clarity from this point forward all references to "OEMs" are to those OEMs that were not based in Wisconsin.

¶5 Under the license agreements, OEMs paid royalties to Microsoft, in exchange for which Microsoft granted the following non-exclusive rights to OEMs: (1) to install Microsoft's software on computers; and (2) to distribute Microsoft's software that was installed on the computers and grant sublicenses for end-users to use the software.

¶6 OEMs sold the computers with the installed Microsoft software to consumers directly or through retailers such as Best Buy. The Commission referred to the consumers as "end-users," and we do the same. All that is at issue here is end use of the Microsoft software that occurred in Wisconsin, not end use that occurred outside Wisconsin.

---

[2] We observe that, during the tax years at issue, it was Microsoft Licensing, a general partnership of which Microsoft Corporation is the general partner, that entered into the license agreements with OEMs. The parties do not contend that the distinction between Microsoft Corporation and the general partnership is material in this case and, for convenience, we will consider the general partnership and the party to this appeal, Microsoft Corporation, to be the same entity.

¶7 Computers sold by OEMs with Microsoft software installed came with End-User Licensing Agreements (which we will refer to as "end-user agreements"). By accessing and using the Microsoft software on the computers sold by OEMs, the end-users agreed to be bound by the terms of the end-user agreements. The terms of the end-user agreements were dictated by Microsoft. By their terms, the end-user agreements were contracts between OEMs and the end-users which started with this sentence: "IMPORTANT—READ CAREFULLY: This [end-user agreement] is a legal agreement between you … and the manufacturer [OEM] of the computer system or computer system component ('HARDWARE') with which you acquired the Microsoft software product(s) identified above ('SOFTWARE')." The DOR does not contend that Microsoft was a party to the end-user agreements.

¶8 In calculating its franchise tax liability to the State of Wisconsin for tax years 2006 to 2009, Microsoft took the position that the software license royalties it received from OEMs should not be considered in calculating its franchise tax. The DOR subsequently conducted an audit and determined that Microsoft was required to include the royalties that it received from OEMs in its Wisconsin franchise tax calculations. Based on that determination, the DOR assessed against Microsoft additional franchise tax for the tax years 2006 through 2009 that, with statutory interest, totaled almost $2.9 million.

¶9 Microsoft petitioned the Commission for review of the additional assessed tax. Following a four-day trial, the Commission reversed the additional franchise tax assessed by the DOR against Microsoft.

¶10 The DOR appealed the Commission's decision to the circuit court, which affirmed the Commission's decision. The DOR appeals.

4

¶11    We will consider other pertinent facts in the Discussion that follows.

## DISCUSSION

¶12    The DOR contends that the Commission erred when it determined that the software license royalties that OEMs paid to Microsoft should not be considered in calculating Microsoft's Wisconsin franchise tax. We now set forth our standard of review, consider the relevant portions of the statutory scheme at issue along with the Commission's application of that scheme and the DOR's challenge to the Commission's decision, and explain why we reject the DOR's arguments in support of its challenge.

### I.  Standard of Review and Statutory Interpretation.

¶13    In an appeal of a circuit court order affirming or reversing an agency decision, we review the decision of the agency, not that of the circuit court. *Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶15, 293 Wis. 2d 1, 717 N.W.2d 166.[3] When reviewing findings of fact made by the Commission, we will affirm the findings if those are supported by substantial evidence. *See id.*, ¶30. "An agency's findings are supported by substantial evidence if a reasonable person could arrive at the same conclusion as the agency, taking into account all the evidence in the record." *Clean Wis., Inc. v. Public Serv. Comm'n of Wis.*, 2005 WI 93, ¶46, 282 Wis. 2d 250, 700 N.W.2d 768. When reviewing questions of law decided by an agency, including statutory interpretation, our review is de

---

[3] We agree with the DOR and Microsoft that the "agency" whose decision we are reviewing is the Commission rather than the DOR. *See, e.g.*, *Wisconsin Bell, Inc. v. LIRC*, 2018 WI 76, ¶¶28-30, 382 Wis. 2d 624, 914 N.W.2d 1.

novo. *See* WIS. STAT. § 227.57(11) (2017-18), *as amended by* 2017 Wis. Act 369, § 80; ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21.[4]

¶14  This appeal concerns issues of statutory interpretation.  Statutory interpretation begins with the statute's text.  We give the text its common, ordinary and accepted meaning, except that we give technical or specially defined words their technical or special definitions.  ***State v. Warbelton***, 2008 WI App 42, ¶13, 308 Wis. 2d 459, 747 N.W.2d 717.  If the meaning of the statute is clear from its plain language, we do not look beyond that language to ascertain its meaning. ***Lake City Corp. v. City of Mequon***, 207 Wis. 2d 155, 163, 558 N.W.2d 100 (1997).

## II.  The Software License Royalties Received by Microsoft from OEMs Were Not Subject to the Wisconsin Franchise Tax.

### A.  Statutory Framework.

¶15  Wisconsin currently imposes, and during the tax years at issue imposed, a franchise tax on a corporation based on the corporation's income derived from, or attributable to, sources within Wisconsin.  *See* WIS. STAT. §§ 71.23(2), 71.25 (2005-06) and (2017-18).  When a corporation is engaged in business within Wisconsin and at least one other state, Wisconsin has adopted a

---

[4] This court gives "due weight" to the "experience, technical competence, and specialized knowledge" of the Commission in certain circumstances. *See* ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶¶6, 108, 382 Wis. 2d 496, 914 N.W.2d 21.  The parties dispute whether we should give "due weight" to the determination of the Commission here.  We need not decide if due weight should be given because we would affirm the Commission's decision with or without giving its determination due weight.

method for determining the portion of the corporation's income that is subject to Wisconsin's franchise tax. That process is known as "apportionment," and we now discuss the aspects of that process as applied here. *See* § 71.25 (2005-06) and (2017-18).

¶16 The parties agree that Microsoft conducts business within and without Wisconsin and that Microsoft's business income is subject to apportionment between Wisconsin and other states.

¶17 WISCONSIN STAT. § 71.25 divides the income of a corporation operating both "within and without" Wisconsin into "apportionable income" and "nonapportionable income." Sec. 71.25(5) (2005-06) and (2017-18). This case concerns only apportionable income, which is income that, for franchise tax purposes, must be allocated to Wisconsin and at least one other state in which the taxpayer, such as Microsoft, is carrying on business. Sec. 71.25(5)(a) (2005-06) and (2017-18).

¶18 Wisconsin franchise tax statutes include an "apportionment formula" that is used to calculate the portion of a corporation's income that is properly attributed to business transacted in Wisconsin and accordingly is taxable by Wisconsin. *See* WIS. STAT. § 71.25(5), (6) and (9) (2005-06) and (2017-18); *Consolidated Freightways Corp. of Del. v. DOR*, 164 Wis. 2d 764, 775, 477 N.W.2d 44 (1991); *United Parcel Serv. Co. v. DOR*, 204 Wis. 2d 63, 65-66, 72-74, 553 N.W.2d 861 (Ct. App. 1996). During the tax years at issue, that apportionment formula included a percentage of Microsoft's sales, referred to in § 71.25(6) as the "sales factor." *See* § 71.25(6)(a)-(d). The dispute in this appeal centers on the sales factor segment of the apportionment formula.

¶19    The version of WIS. STAT. § 71.25 in effect during the tax years at issue defined the "sales factor" for a taxpayer corporation such as Microsoft as "a fraction," consisting of "[a] numerator … which is the total *sales of the taxpayer in this state* during the tax period, and [a] denominator … which is the total sales of the taxpayer everywhere during the tax period."  Sec. 71.25(9)(a) (emphasis added).  The resulting quotient represented the percentage of the sales of the corporate taxpayer subject to the Wisconsin franchise tax.  *See **United Parcel Serv.***, 204 Wis. 2d at 73-74.

¶20    WISCONSIN STAT. § 71.25(9) contained detailed subparts governing computation of the sales factor.  The provisions in the subparts varied depending on the type of sale generating the income.  *See* § 71.25(9)(b)-(dh).  The subpart that the Commission applied, § 71.25(9)(d), concerned sales of intangibles and stated in pertinent part:  "Except as provided in pars. (df) and (dh), sales … are in this state [and should therefore be included in the numerator of the sales factor] if the income-producing activity is performed in this state."  The Commission determined that, under this subpart, OEMs' royalties to Microsoft should not be included in the numerator of the sales factor because those royalties were not income-producing activities in Wisconsin.

¶21    The DOR does not question the Commission's application of WIS. STAT. § 71.25(9)(d).  Rather, the DOR argues that the Commission erred in failing to apply one exception to § 71.25(9)(d), namely, § 71.25(9)(df), which states in pertinent part:  "Gross receipts from the use of computer software are in this state

if the … *licensee* uses the computer software at a location in this state." (Emphasis added.)[5]

¶22    Thus, the question in this appeal is whether the Wisconsin end-users of the Microsoft software in computers sold by OEMs were "licensees" as that term is used in WIS. STAT. § 71.25(9)(df). We now address, and reject, the DOR's arguments that we should answer that question in the affirmative.

### B. End-Users Were Not Licensees of Microsoft.

¶23    As stated, WIS. STAT. § 71.25(9)(df) created franchise tax liability when a "licensee uses the computer software at a location in this state." The DOR asserts that the end-users were licensees of Microsoft in two respects: (1) as a matter of law; and (2) viewing "the transactions … as a whole."

¶24    Before considering those arguments, we note the following applicable definitions. The pertinent statutes do not contain definitions of the common terms license, licensor, licensee, sublicense, or sublicensee. But, the meanings are well known, and neither party offers a different definition of these terms. A licensor grants a portion of its rights, such as intellectual property rights in software, to a licensee through a license. *See* BLACK'S LAW DICTIONARY 1061, 1062 (10th ed. 2014). A licensee may grant to another, through a sublicense, a

---

[5] WISCONSIN STAT. § 71.25(9)(df)1. also applies to a "purchaser." No party claims that the term "purchaser" makes any difference to our analysis, and the Commission's decision did not rely on the term "purchaser." Accordingly, for clarity we limit our discussion to "licensee[s]."

Separately, we note that the parties do not dispute that the end-users "use[d]" the Microsoft software, but OEMs did not "use" the Microsoft software as that term is used in WIS. STAT. § 71.25(9)(df)1.

portion or all of the rights granted to the licensee by the original license. *See id.* at 1652. The party holding a sublicense is known as a sublicensee. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2276 (1993).[6]

### *1. End-Users Were Not Licensees of Microsoft as a Matter of Law.*

¶25 The DOR contends that the end-users were licensees of Microsoft "as a matter of law." More specifically, the DOR argues that, "[w]hile the [end-user agreement] is a sublicense of the right to use Microsoft's software, it is in fact a license with Microsoft for the end[-]user to use that software," and "[a] sublicensee is still a licensee of the licensor." However, the only support that the DOR provides for this argument has no content. The DOR relies solely on the following language contained in a footnote in ***Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.***, 284 F.3d 1323 (Fed. Cir. 2002), which the DOR refers to as a "holding" in that opinion: "An authorized sublicense is in effect an agreement with the [original] licensor. Unless the agreement with the licensee provides otherwise, the sublicense will continue despite the early termination of the license agreement." *Id.* at 1332 n.7 (quoting BRIAN G. BRUNSVOLD & DENNIS P. O'REILLEY, DRAFTING PATENT LICENSE AGREEMENTS 37 (BNA 4th ed. 1998)).

¶26 But, this footnote passage is not a holding. Rather, the passage merely repeats a statement contained in a treatise on patent licensing that was cited

---

[6] The weakness of the DOR's position is reflected in its inconsistent use of terminology in its briefing on appeal. The DOR often says that each end-user had a "sublicense." However, at other points in its briefing, the DOR refers to the end-user agreements as "licenses" between the end-users and Microsoft. As we note in the next section of this opinion, the DOR also contends that each end-user had both a license with Microsoft and a sublicense with the OEM through the terms of the end-user agreement.

to the ***Rhone-Poulenc Agro*** court, and that court declined to adopt the reasoning of the treatise. ***Id.*** at 1332. For that reason, alone, we reject this argument.

¶27    Moreover, the quoted portion of the treatise relied on by the DOR does not support the DOR's assertion. The treatise does not state that sublicensees, such as the end-users here, have direct licenses with a licensor, such as Microsoft. It states that a sublicense is, at most, "in effect" an agreement between the sublicensee and the licensor, and that effect is exclusively for the limited purpose of continuation of the sublicense when the license has been terminated.

¶28    The quoted language from the treatise does not stand for the proposition that, as a matter of law, the end-user agreements were licenses between the end-users and Microsoft.

### *2. End-Users Were Not Licensees of Microsoft When Viewing the Transactions as a Whole.*

¶29    Next, the DOR argues that the Commission's determination that the end-users were not licensees of Microsoft was "myopic" and "disregard[ed] the economic reality" of these transactions. The DOR contends that, although OEMs were licensees of Microsoft, the end-users were *also* licensees of Microsoft when viewing the "transactions … as a whole." As we now discuss, the DOR's arguments are rejected based on:  the pertinent statutory framework; the Commission's findings of fact regarding the Microsoft and OEM transactions and the OEM and end-user transactions; and the terms of the end-user agreements.

¶30    Initially, we note that the question of whether the end-users had licenses with Microsoft as the DOR proposes, or instead the end-users did not

11

have a contractual relationship with Microsoft and had only a sublicense with OEMs as the Commission concluded, must be viewed in the light of the applicable statutory language. To repeat, the exception in the statutory subpart the DOR relies on, WIS. STAT. § 71.25(9)(df), is limited to a "licensee" who uses Microsoft's software in Wisconsin. *See* § 71.25(9)(df). The text of the statutory provision makes no reference to use of the computer software in Wisconsin by a *sublicensee*. As already discussed, the terms "license," "licensor," "licensee," "sublicense," and "sublicensee" have commonly understood meanings in the law.[7] In construing the subpart in this fact situation, we must be mindful of those meanings and the distinction between a license and a sublicense. *See* WIS. STAT. § 990.01(1) ("All words and phrases shall be construed according to common and approved usage; *but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning*." (emphasis added)); *see also **State v. Hemp***, 2014 WI 129, ¶31, 359 Wis. 2d 320, 856 N.W.2d 811 (appellate courts "should not read into [a] statute language that the legislature did not put in" (quoted source omitted)). We presume that the legislature chose the term "licensee" carefully to express the statute's intended meaning. *See **Hemp***, 359 Wis. 2d 320, ¶31.

¶31 With those precepts in hand, we conclude that the DOR's argument fails because both the findings of the Commission, and the terms of the end-user agreements, foreclose the assertion of the DOR that the end-users were licensees of Microsoft.

---

[7] *See* ¶24, above.

¶32 The Commission determined that the end-users were not licensees of Microsoft software, in part, because of the Commission's factual findings that the end-users did "not purchase software and software licenses from, and [were] not the customers of, Microsoft." Consistent with that finding, the Commission found that there was no "direct relationship" between Microsoft and the end-users. Those findings inevitably lead to the conclusion that there was no license between Microsoft and the end-users because the end-users did not purchase anything, including a license, from Microsoft. The DOR gives no reason for us to reject those factual findings and that conclusion.

¶33 The Commission's determination is confirmed by the terms of the end-user agreements, the only contracts that the end-users agreed to in this factual context. As a starting point, we note that the parties do not dispute that a license is a contract. *See Fraunhofer-Gesellschaft Zur Förderung der Angewandten Forschung E.V. v. Sirius XM Radio, Inc.*, 2019 WL 5250712, at \*6 (Fed. Cir. Oct. 17, 2019) ("[W]e are confident that in the future, parties to license contracts will resolve this issue by including contract language specifically addressing the survival of sublicense rights."). The parties also do not dispute that a sublicense is a contract. *See id.* at \*6 ("[A] district court may [not] forgo contract interpretation and assume that a sublicense survives by operation of law.").

¶34 Upon our independent review of the end-user agreements, we agree with the Commission's interpretation that those were contracts only between OEMs and the end-users. *See Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586 (contract interpretation presents a question of law an appellate court reviews de novo). As noted in the Background section, the end-user agreements explicitly stated that the contracts were between the end-users and OEMs, and the DOR does not contend that Microsoft was a party to the

end-user agreements. It then follows that there could not have been mutual expression of assent to the end-user agreements, a requirement for a valid contract such as a license, by both Microsoft and an end-user because Microsoft was not a party to the end-user agreement. *See **Gustafson v. Physicians Ins. Co. of Wis., Inc.***, 223 Wis. 2d 164, 173, 588 N.W.2d 363 (Ct. App. 1998) (setting forth the requirements for a contract). Without that basic requirement for a contract, there were no licenses between Microsoft and the end-users, and the end-users were not licensees of Microsoft.

¶35 The DOR makes three arguments concerning these transactions that, according to the DOR, demonstrate that the end-users were licensees of Microsoft. However, each contention of the DOR is overcome by findings of the Commission.

¶36 The DOR argues, first, that the end-users were licensees of Microsoft because "[e]nd users pay a premium for the license to use Microsoft's software, over the cost of the hardware alone." However, the DOR's argument is nothing more than a re-wording of the unremarkable proposition that OEMs paid Microsoft for the software licenses, and the end-users paid OEMs for the sublicenses as part of the cost of the purchased computers. The DOR makes no viable argument that the mere fact that the end-users had to pay for the Microsoft-created software made them licensees of Microsoft.

¶37 Second, the DOR asserts that each end-user had a license with Microsoft because each paid Microsoft "indirectly" for the right to use Microsoft software. That is based on the DOR's further assertion that "Microsoft receives these gross receipts [using the phrase in WIS. STAT. § 71.25(9)(df)] for end users'

licenses to use Microsoft's computer software." The DOR gives no record citation for either assertion.

¶38 The Commission rejected this argument and found that "Microsoft's gross receipts were not a function of use by actual end-users." We affirm the Commission's finding because substantial evidence in the record demonstrates that the amounts paid to Microsoft by OEMs for the software licenses were not paid as a result of end-user payments to OEMs for the sublicenses as the DOR asserts. The Commission found, and the DOR does not dispute, that the obligations of OEMs to pay royalties to Microsoft for licenses did not depend on OEMs' sales of the computers because OEMs were required to pay royalties to Microsoft even when OEMs did not sell the computers on which the Microsoft software was installed. Microsoft, in briefing in this court, relies on evidence in the record that Microsoft was paid by OEMs for the licenses months (if not years) before OEMs sold the computers, with licensed Microsoft software included, to the end-users. In reply, the DOR does not dispute those facts. The Commission further found, and the DOR does not dispute, that the royalties that OEMs paid to Microsoft were not tied in any way to the prices for which OEMs sold the computers, and that OEMs, not Microsoft, were entitled to the sale proceeds and profits from the sales of all of the OEMs' computers, including any amounts attributable to the software. Thus, the licensing royalties that OEMs paid Microsoft were not paid indirectly by the end-users.

¶39 Third, again without any citation to the record, the DOR argues that the end-users were licensees of Microsoft because, in this factual setting, the only agreements between Microsoft and OEMs, or between OEMs and the end-users, with any monetary value were the end-user agreements. We reject that assertion because, as already noted, the Commission found (and the DOR does not dispute)

that OEMs paid royalties to Microsoft even when OEMs did not sell the computers on which the software was installed. This uncontested finding establishes that the licenses between Microsoft and OEMs also had monetary value.

¶40 The DOR makes several other arguments, each of which we decline to accept.

¶41 The DOR asserts that the end-users were licensees of Microsoft because the licenses that Microsoft granted to OEMs "fully contemplate[d] that [] OEMs [would] grant … sublicenses to … [end-users]." However, the DOR does not explain how or why that fact created a licensor-licensee relationship between Microsoft and the end-users. We will not abandon our neutrality by attempting to construct an argument for the DOR. *See Industrial Risk Insurers v. American Eng'g Testing*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

¶42 The DOR also argues that WIS. STAT. § 71.25(9)(df) should apply here because it is more "specific" than § 71.25(9)(d); that is, § 71.25(9)(df) concerns the sale of computer software, whereas § 71.25(9)(d) concerns sales of intangibles generally. Even though § 71.25(9)(df) is specific to computer software, it must be applicable in the first instance for the DOR's contention to have any basis. The DOR's assertion about the specificity of § 71.25(9)(df) does not answer the question of whether the terms of that subpart are applicable in this factual situation.

¶43 In addition, the DOR argues that it has "express authority to consider … 'any other factors that reflect the use of computer software'" in Wisconsin, "which gives [the DOR] broad discretion in the interpretation of [WIS. STAT. § 71.25(9)(df)1]." Section 71.25(9)(df)2. provides that "[t]o determine computer

software use in this state, [the DOR] may consider … any other factors that reflect the use of computer software in this state." However, the DOR's argument ignores the plain directive of § 71.25(9)(df)1., which we have discussed at length above, that the software must be used by a licensee in order for § 71.25(9)(df)1. to apply. The phrase "any other factors" in subdivision 2. allows the DOR only to consider diverse facts in determining the *extent* of a licensee's use of software in Wisconsin. That language does not give the DOR the authority to reject statutory language in favor of the DOR's desired result.

¶44 Accordingly, we reject the DOR's arguments that the end-users were licensees of Microsoft.

### C. OEMs Were Not Agents of Microsoft.

¶45 The DOR attempts another challenge to the Commission's decision. It argues that OEMs acted as agents of Microsoft "for the limited purpose of granting sublicenses of Microsoft's computer software to end[-]users," and, therefore, "the licenses are, in effect, between Microsoft and the end[-]users." We are not persuaded.

¶46 "[A]n agent is one who acts on behalf of and is subject to reasonably precise control by the principal for the tasks the person performs within the scope of the agency." *Westmas v. Creekside Tree Serv., Inc.*, 2018 WI 12, ¶36, 379 Wis. 2d 471, 907 N.W.2d 68. The agent has the duty to act solely for the benefit of the principal in all matters connected with the agency, even at the expense of the agent's own interest. *Losee v. Marine Bank*, 2005 WI App 184, ¶16, 286 Wis. 2d 438, 703 N.W.2d 751. Whether an agency relationship exists is a question of fact that turns on the understanding between the alleged principal and the alleged agent of the relationship. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340

N.W.2d 575 (Ct. App. 1983) (*citing **Soczka v. Rechner***, 73 Wis. 2d 157, 163, 242 N.W.2d 910 (1976)).

¶47    The DOR asserts that OEMs were Microsoft's agents because Microsoft "tightly control[ed] … OEMs with regard to … OEMs' authority to grant [sub]licenses to end[-]users."  The Commission found that OEMs did not act "as agents of Microsoft but as actors in their own right."  More specifically, the Commission found the following in rejecting the DOR's agency argument, some of which are findings to which we have already referred:

- Microsoft "had no say in whether or to whom" OEMs would sell their computers and the accompanying software licenses.

- OEMs, not Microsoft, determined which components to include in their computers, chose the markets in which to sell their computers, and determined pricing and other aspects of the sale of their computers.

- OEMs were responsible for paying royalties for the Microsoft license regardless of whether OEMs ultimately sold the computers into which the Microsoft software was installed.

- The royalties paid to Microsoft from OEMs were not tied in any way to the prices at which OEMs sold the computers.

- OEMs, not Microsoft, were entitled to the sale proceeds and profits from the sale of any of the OEMs' computers, including any amount attributable to the software.

- OEMs owed no accounting to Microsoft for the proceeds of their sale of their computers, as OEMs would if OEMs were agents that were transacting on Microsoft's behalf.[8]

- Microsoft did not provide product support to the end-users; instead, OEMs were responsible for providing any product support to the end-users.

¶48    These findings provide substantial evidence that OEMs were not Microsoft's agents.  *See Wisconsin Bell, Inc. v. LIRC*, 2018 WI 76, ¶42, 382 Wis. 2d 624, 914 N.W.2d 1 (an appellate court will affirm an agency's finding if the finding is supported by substantial evidence).  The DOR neither disputes these factual findings of the Commission nor points this court to evidence in the record sufficient to overcome the Commission's factual findings supporting its determination that OEMs did not act as an agent, solely for Microsoft's benefit, when selling their computer systems containing the Microsoft software.  *See Westmas*, 379 Wis. 2d 471, ¶36 (describing agency relationship); *Losee*, 286 Wis. 2d 438, ¶16 (describing agency relationship).

¶49    The DOR then argues that, regardless of the factual findings of the Commission, OEMs were, as a matter of law, Microsoft's agents in this factual context.  In support, the DOR relies solely on the following language from a 1947 federal Tax Court opinion:  "A sublicense can be granted only where the license expressly authorizes, *and the main licensee is the agent of the licensor in*

---

[8] *See Degner v. Moncel*, 6 Wis. 2d 163, 167, 93 N.W.2d 857 (1959) ("[A]n agent who makes a profit in connection with the transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.").

*negotiating a sublicense.*" ***Federal Labs., Inc. v. Commissioner of Internal Rev.***, 8 T.C. 1150, 1157 (1947) (emphasis added).

¶50    We reject the DOR's position for several reasons.  First, we are not bound by the Tax Court opinion.  ***City of Weyauwega v. Wisconsin Cent. Ltd.***, 2018 WI App 65, ¶12 n.4, 384 Wis. 2d 382, 919 N.W.2d 609 (other than United States Supreme Court decisions on federal law, we are not bound by federal court decisions, but we may follow federal court decisions that we consider persuasive).

¶51    Second, the DOR's contention that the question of agency can be decided in this case as a matter of law is contrary to Wisconsin law on agency, under which we are to consider this to be an issue of fact.  In ***Noll***, it was argued that whether a principal-agent relationship exists is a question of law.  ***Noll***, 115 Wis. 2d at 643.  We rejected that contention and held:  "On the contrary, the determination of whether a principal-agent relationship exists is a question of fact for the trier-of-fact."  ***Id.***  And, as already discussed, the Commission as the trier of fact made findings that rejected the notion that OEMs were agents of Microsoft in this factual context.

¶52    Third, we question whether the language used by the Tax Court supports the DOR's broad position.  At most, the quoted language states that the licensee is an agent in the discrete process of "negotiating a sublicense" in anticipation of possible contract formation, not an agent under an enforceable contract.  *See* ***Federal Labs***, 8 T.C. at 1157.  That phrase cannot reasonably be construed to mean that, because OEMs granted sublicenses to the end-users, those separate sublicenses were transformed into license agreements between Microsoft and the end-users.

¶53    In sum, we reject the DOR's arguments that OEMs were agents of Microsoft and, on this basis, Microsoft should be deemed to have granted licenses to the end-users.

**D. Use of the Software, Alone, Does Not Satisfy the Statutory Requirement.**

¶54    Finally, the DOR argues that WIS. STAT. § 71.25(9)(df) "depends entirely on 'use.'"  More specifically, the DOR contends that "the *only* relevant factor is where the software is used" and "[t]he location of [] OEM[s], which [do] not use the software, is not germane .…  OEM[s] [are] essentially irrelevant."  For this reason, according to the DOR, to the extent that the end-users used the Microsoft software in Wisconsin pursuant to sublicenses from OEMs, royalties to Microsoft from OEMs for the software licenses should be considered in calculating Microsoft's Wisconsin franchise tax liability.

¶55    As with other arguments we have rejected above, the DOR's exclusive focus on the use of the software ignores the statutory requirement that there must be a "licensee" that uses the software in this state for WIS. STAT. § 71.25(9)(df) to apply.  *See* § 71.25(9)(df).  The royalties paid by OEMs to Microsoft were not subject to the Wisconsin franchise tax because, as noted, the end-users were not licensees of Microsoft.

¶56    As we have already stated, it is beyond the purview of this court to redraft WIS. STAT. § 71.25(9)(df) as the DOR requests.  *See* ***Hemp***, 359 Wis. 2d 320, ¶31.  For that reason, we reject this contention of the DOR.

## **CONCLUSION**

¶57　For the reasons discussed above, we affirm the order of the circuit court.

*By the Court.*—Order affirmed.